```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF NEW JERSEY
```

```
   LORIE H.,

                         Plaintiff,    1:20-cv-13192-NLH

   v.                                  OPINION

   COMMISSIONER OF SOCIAL
   SECURITY,¹
```

**APPEARANCES:**

JENNIFER LILLEY STONAGE
RICHARD LOWELL FRANKEL
BROSS & FRANKEL
724 KENILWORTH AVE, SUITE 2
CHERRY HILL, NJ 08002

   *On behalf of Plaintiff*

DAVID E. SOMERS , III
LAUREN DONNER CHAIT
NAOMI B. MENDELSOHN
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
6TH FLOOR
PHILADELPHIA, PA 19123

   *On behalf of the Commissioner*


**HILLMAN**, District Judge

   This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

---

¹ On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration.

405(g), regarding Plaintiff's application for Disability Insurance Benefits ("DIB")[2] under Title II of the Social Security Act.  42 U.S.C. § 423, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since her alleged onset date of disability, August 15, 2016.  For the reasons stated below, this Court will affirm that decision.

I.   BACKGROUND AND PROCEDURAL HISTORY

On September 12, 2016, Plaintiff protectively filed an application for DIB,[3] alleging that she became disabled on August 15, 2016.  (R. at 13).  Plaintiff claims that she cannot work because of her impairments of status post craniotomy with tumor embolization, osteoarthritis, carpal tunnel syndrome, hypertension, hypothyroidism, obesity, depressive disorder, anxiety disorder, obstructive sleep apnea, and fibromyalgia.[4]

---

[2] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

[3] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file for benefits.  That date may be earlier than the date of the formal application and may provide additional benefits to the claimant.  See SSA Handbook 1507; SSR 72-8.

[4] On the alleged onset date, Plaintiff was 46 years old, which is defined as a "younger person" (age 49 and under).  20 C.F.R. §

(ECF 14 at 2).

Plaintiff's claim was denied initially and upon reconsideration. (R. at 13). Plaintiff requested a hearing before an ALJ, which was held on May 13, 2019. (Id.) On August 30, 2019, the ALJ issued an unfavorable decision. (Id. at 24). Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on August 11, 2020, making the ALJ's decision final. (Id. at 1). Plaintiff brings this civil action for review of the Commissioner's decision.

## II. DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305

---

404.1563.

U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d

4

700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the factfinder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.   Standard for DIB**

5

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.  If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

2.  If the claimant does not suffer from a "severe impairment," she will be found "not disabled."

3.  If the severe impairment meets or equals a listed

6

> 
>     impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."
> 
> 4.  If the claimant can still perform work she has done in the past ("past relevant work") despite the severe impairment, she will be found "not disabled."
> 
> 5.  Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not she is capable of performing other work which exists in the national economy. If she is incapable, she will be found "disabled." If she is capable, she will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

## C.  Analysis

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 15, 2016, Plaintiff's alleged onset date and that she had sufficient insurance coverage through September 30, 2019.  (R. at 15).  At step two, the ALJ found that Plaintiff's impairments of status post-craniotomy with tumor embolization, osteoarthritis, carpal tunnel syndrome, hypertension, hypothyroidism, obesity, depressive disorder, and anxiety disorder were severe.[5]  (Id.) At step three, the ALJ determined that Plaintiff's impairments individually or in combination with one another did not equal the severity of one of the listed impairments.  (Id. at 16-18).

The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform work at the sedentary level,[6] with certain exertional, postural, environmental,

---

[5] As stated above, Plaintiff references non-severe impairments of obstructive sleep apnea and fibromyalgia in her opening brief before this Court.  (ECF 14 at 2).  Those two conditions were not mentioned in the ALJ's decision.  Plaintiff indicates that those conditions are documented on page 1030 of the record. (Id.) However, the Court's independent review of that page and the surrounding pages reveals no reference to sleep apnea and only one-word references to "fibromyalgia" on pages 1042 and 1045 of the record.  Sleep apnea appears to be mentioned in passing a few times in the record, most clearly on page 573.  In any case, Plaintiff appeals on issues unrelated to the ALJ's treatment of those two conditions.

[6] 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

8

manipulative, and mental restrictions. (Id. at 18). At steps four and five, the ALJ determined that Plaintiff did not have any past relevant work, but that that based on her RFC, she would be able to perform sedentary occupations such as document preparer, scale operator, preparer. (Id. at 23).

From the Court's review of Plaintiff's briefing, the Court discerns three areas of concern: (1) whether the ALJ erred by failed to resolve inconsistencies between the vocational expert's (the "VE") testimony and the Dictionary of Occupational titles (the "DOT") per SSR-004p; (2) whether the ALJ erred in his treatment of medical opinion evidence; and (3) whether the ALJ failed to assign proper limitations for the Plaintiff's severe impairments. (See ECF 14 at 1).

### i. Resolving the VE's Testimony

The Court rejects Plaintiff's first assignment of error. Plaintiff argues that the VE's testimony contained a conflict in that the VE identified potential jobs for Plaintiff that the DOT does not list as having manipulative limitations. (ECF 14 at 14-16). Plaintiff argues that SSR-004p requires an ALJ to resolve a conflict when one appears between the VE's proposal of jobs a claimant could do based on their RFC and the description of those jobs in the DOT. (Id. at 14). A close look at Plaintiff's brief reveals that her real argument is that her RFC should have included more manipulative limitations such that the

9

jobs proposed by the VE, based on their descriptions in the DOT, would have been in conflict with an RFC that included more manipulative limitations. (Id. at 15-16 ("The findings of the ALJ are particularly concerning where the Plaintiff testified to manipulative limitations aside from just typing. The Plaintiff testified at length about her limitations using her hands, including difficulty with gripping, tying shoes, undoing buttons and holding a pen. (AR 40). It is unclear from the decision why the ALJ determined that the plaintiff's limitations to just typing are all that is supported by the record, thus remand is proper.")).

In the ALJ's RFC analysis, the ALJ found Plaintiff "can perform all manipulative functions frequently except she can only occasionally keyboard or type." (R. at 18). This Court will not disturb that finding as it was supported by substantial evidence. Fargnoli, 247 F.3d at 38. In arriving at this RFC limitation, the ALJ specifically discussed Plaintiff's self-completed function report from September 18, 2016, where she did not check a box indicating that her conditions affected her ability to use her hands. (R. at 274). The ALJ specifically cited to medical reports that indicated that "fine hand motor movements are within normal limits bilaterally." (R. at 20). He also neatly explained why he discounted medical evidence to the contrary: because it was based on a one-time evaluation and

10

the medical source statement did not provide medical evidence to support the suggested limitations. (R. at 22).

To the extent that Plaintiff is further arguing that the ALJ otherwise had a duty to elicit VE testimony on specific manipulative limitations for the proposed jobs, Plaintiff cites no authority for that proposition. Indeed, where the DOT is silent on an issue, such as manipulative limitations, there is no conflict for the ALJ to resolve. Tracey v. Comm'r Soc. Sec., 760 F. App'x 121, 124 (3d Cir. 2019) (rejecting appellant's contention that because the DOT description was silent on mental capacity issues but the hypothetical to the VE indicated that he could only make simple judgments constituted a conflict that the ALJ had a duty to clarify); William I.B. v. Comm'r of Soc. Sec., No. CV 20-17380 (RBK), 2022 WL 577958, at *6 (D.N.J. Feb. 25, 2022) ("It is well established in this circuit that where the DOT is silent on an issue, a conflict does not exist.") (internal alterations and quotation marks omitted). The DOT did not reference manipulative parameters for the jobs proposed by the ALJ.[7] The ALJ specifically asked the VE to indicate if there was conflict between the DOT descriptions of the proposed jobs and Plaintiff's RFC as posed in the hypothetical and the VE did

---

[7] See DICTIONARY OF OCCUPATIONAL TITLES, available at https://occupationalinfo.org/ (last visited July 15, 2022).

11

not indicate any conflicts.  (R. at 58-60).  Thus, the Court rejects Plaintiff's first assignment of error.

### ii. Weighting of Medical Evidence

Plaintiff's next assignment of error is the ALJ's weighting of medical opinion evidence, specifically, that of Dr. Pamela Traisak.  Plaintiff contends that Dr. Traisak's opinion was entitled to more weight as an opinion from a treating physician.[8] (ECF 14 at 16).  The Third Circuit in Farngoli explained, "Where a treating source's opinion on the nature and severity of a claimant's impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record, it will be given controlling weight." Fargnoli, 247 F.3d at 43 (internal alternations and quotation marks omitted).

However, there must be an ongoing relationship between the patient and the doctor for that doctor to be considered a treating physician under the regulations for claims filed prior to March 27, 2017.  20 C.F.R. § 404.1527(a)(2) ("Treating source means your own acceptable medical source who provides you, or

---

[8] Plaintiff's claim was filed prior to March 27, 2017, when the regulations were amended for various provisions, including for the "treating physician rule."  See 82 F.R. 5844.  The parties do not dispute that the treating physician rule is applicable to Plaintiff's claim.

has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."); Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993) ("[A] court considering a claim for disability benefits must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all."); Clark v. Astrue, No. CIV.A. 09-192, 2010 WL 3909161, at *8 n.17 (D. Del. June 30, 2010), report and recommendation adopted, No. 1:09-CV-192, 2010 WL 3907772 (D. Del. Sept. 29, 2010) (holding that a doctor who treated a patient only once was not considered a treating physician). Dr. Traisak only examined Plaintiff one time in September 2018. (See R. at 968, 1002).  Therefore, her opinion was not entitled to controlling weight.

Separately, the ALJ provided cogent reasons as to why he only provided Dr. Traisak's opinion with "little weight." The ALJ stated, "Little weight is given to these opinions because, although these opinions are based on personal examination of the claimant; this was only a one-time evaluation and the medical source statement does not provide adequate evidence supporting such great limitations." (R. at 22). A review of Dr. Traisak's statement reveals that she left blank most of the comment sections of the medical source statement, where she could have provided rationale for the limitations she

13

proposed. (R. at 968-73). Further, the actual record from Dr. Traisak's examination of Plaintiff only revealed mild to moderate carpal tunnel syndrome. (Id. at 1006). The notes of from the visit do not explain that diagnosis and Dr. Traisak's medical statement report does not explain how that diagnosis links to a limitation to only "occasional" handling and fingering as she checked off in her statement. (R. at 971).

Plaintiff also argues that the ALJ's discounting of Dr. Traisak's report is not supported by substantial evidence because he afforded "partial weight" to other physicians who examined Plaintiff once or who only reviewed the medical records. (ECF 14 at 17). The problem with Plaintiff's argument is that it assumes that the only reason Dr. Traisak's opinion was given less weight was because she only examined Plaintiff once. The ALJ specifically found in addition to that fact that the limitations imposed by Dr. Traisak were not consistent with the evidence in the medical record. (R. at 22). For the other medical sources that were afforded partial weight, the ALJ did not find that they were not supported by evidence in the record and explained where he found them to have merit. (See, e.g., R. at 21-22 ("These opinions merit partial weight because the consultants are familiar with the program, they examined the available medical records, and their opinions are based on the available medical records.")). Plaintiff does not argue that

14

those medical opinions were not supported by medical evidence such that they too should be afforded less weight.  This Court has reviewed the medical record as a whole and is satisfied that these findings by the ALJ are supported by substantial evidence. Williams, 970 F.2d at 1182.

### iii. Assignment of Limitations in the RFC

Finally, Plaintiff complains that the ALJ erred in failing to assign proper limitations for the Plaintiff's severe impairments including the need for a cane, headaches, manipulative limitations and time off-task or absent.  (ECF 14 at 1).  Plaintiff explains that this argument stems from an ALJ's duty to perform a function-by function analysis when arriving at an RFC for a claimant.  (Id. at 20-25).  She states that the ALJ failed to include limitations consistent with her status-post craniotomy with tumor embolization and that the ALJ's discussion of her resulting mental limitations at step three does not suffice for the RFC analysis. (Id. at 22). Plaintiff ties her argument to the requirements of SSR 96-8p.

SSR 96-8p requires a narrative of how the evidence supports the ALJ's conclusion regarding the RFC.  At a high level, the RFC is a function-by-function assessment based on all of the relevant evidence of an individual's ability to do work-related activities, but an ALJ does not need to use particular language or adhere to a particular format in conducting her RFC analysis.

15

Ungemach v. Commissioner of Social Security, 2019 WL 3024858, at *4 (D.N.J. 2019) (citing Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)).  SSR 96-8p requires that each function "must be considered," but it does not require every function to be specifically delineated in the RFC.  Indeed, SSR 96-8p contemplates that in her "final RFC assessment," an ALJ may assess the functions in combination rather than individually.

While a neat organization of the analysis around each function is preferable, failure by an ALJ to do so is not reversible error where the ALJ explains her RFC findings and those findings are supported by substantial evidence.  Malcolm v. Commissioner of Social Security, 2017 WL 5951703, at *19 n.14 (D.N.J. 2017) (noting "where, as here, the ALJ's RFC determination is supported by substantial evidence, and is 'accompanied by a clear and satisfactory explication of the basis on which it rests,' [Fargnoli, 247 F.3d at 41], the Third Circuit does not require strict adherence to the function-by-function analysis set forth in Social Security Ruling 96-8p") (citing Chiaradio v. Comm'r of Soc. Sec., 425 F. App'x 158, 161 (3d Cir. 2011) (affirming the ALJ's RFC determination, despite the fact that "the ALJ did not make a task by task analysis," where the ALJ's RFC finding was supported by substantial evidence in the record, and the ALJ's "overall review carefully considered [the claimant's] past relevant work and the ALJ

16

assessed what [the claimant] could reasonably do.")); Garrett v. Comm'r of Soc. Sec., 274 F. App'x 159, 164 (3d Cir. 2008) (affirming the ALJ's RFC determination, despite the ALJ's failure to perform the precise function-by-function assessment outlined in SSR 96-8p, where the ALJ questioned the claimant about the physical limitations of her prior work, and substantial evidence supported the ALJ's findings); Bencivengo v. Comm'r of Soc. Sec., 251 F.3d 153 (Table), [published in full-text format at 2000 U.S. App. LEXIS 38785 at *5] (3d Cir. Dec. 19, 2000) ("Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing.")).

The Court disagrees with Plaintiff's characterization of the ALJ's analysis of Plaintiff's limitations in the RFC analysis, particularly her mental limitations associated with status-post craniotomy with tumor embolization. First, the ALJ did not only discuss Plaintiff's "moderate" mental limitations at step three but also during the RFC analysis when he discussed the findings from Plaintiff's mental evaluations, specifically in the context of Plaintiff's tumors. (R. at 21-22).

In terms of other physical limitations such as headaches or those that would necessitate the use of a cane or cause her to miss work, the ALJ outlined his view of the medical evidence that bore on those points, referencing examinations that

17

Plaintiff underwent relating to her ability to ambulate, her pain, and her mental health after the procedure.  (R. at 19-22). The ALJ specifically mentioned the craniotomy and how the claimant appeared to have recovered well from the procedure. (Id. at 19 ("The record reflects that the claimant had a good recovery.  However, the claimant continued to have headaches.") (internal citations omitted)).  The Third Circuit has made clear that there is no magic language needed to satisfy the RFC analysis as long as the ALJ adequately and clearly explains his findings.  Hess v. Comm'r Soc. Sec., 931 F.3d 198, 209 (3d Cir. 2019) ("[A]wide range of limitation language is permissible, regardless of what the ALJ found at earlier steps of the analysis, so long as the chosen limitation language is explained.").  The ALJ adequately explained his limitation findings in the RFC analysis by tying his findings to medical evidence and the Court will not disturb that analysis.

### III. Conclusion

For the reasons expressed above, the decision of the ALJ was supported by substantial evidence and must be affirmed.

An accompanying Order will be issued.


Date: July 18, 2022                    s/ Noel L. Hillman
At Camden, New Jersey                  NOEL L. HILLMAN, U.S.D.J.